## Leedom et al., Appellants, v. Palmer et ux.

*Deed—Gift of real estate—Confidential relation—Brother and sister—Consideration for support—Family settlement—Dependency —Evidence—Burden of proof.*

1. A confidential relation, between the parties to a deed, appears when the circumstances make it certain the parties do not deal on equal terms, but on the one side there is an overmastering influence, or, on the other, weakness, dependance or trust, justifiably reposed.

2. When these circumstances appear, the law presumes the transaction void, unless the party, claiming the benefit of such transaction, shows affirmatively that no deception was used and the act was the intelligent and understood act of the grantor, fair, conscientious and beyond the reach of suspicion.

3. In some cases the confidential relation is a conclusion of law, in others, it is a question of fact to be established by the evidence.

4. The mere existence of kinship does not, of itself, give rise to confidential relations such as would impose the burden of proof on the one receiving the gift or grant to assert its validity.

5. A child may take a gift from a parent without being required to furnish explanatory testimony; nor is there confidential relation simply because the parties to the transaction are brothers and sisters.

6. Where a conveyance of property is to a relative in consideration of support for life, it is favored as a family settlement, in the absence of fraud or undue influence.

7. Dependency does not necessarily beget a confidential relation.

8. While not confined to any specific association of parties, a confidential relation generally exists between trustee and cestui que trust, guardian and ward, attorney and client and principal and agent.

9. Where undue influence and incompetency do not appear, and the relation between the parties is not one ordinarily known as confidential in law, the evidence to sustain a confidential relation . must be certain.

10. Where a brother has conveyed a farm to his sister and her husband in consideration of support for life, the mere fact that the donor, when he could not leave the house, gave his brother-in-law a power of attorney to satisfy a mortgage on the farm, is not sufficient to establish a preëxisting confidential relation.

11. In such case, it was held, under all the evidence in the case, and in the absence of undue influence and incompetency, that no such confidential relation existed between the donor and the donees as imposed upon the latter the burden of proving the validity of the deed.

Argued February 7, 1922.    Appeal, No. 141, Jan. T., 1922, by plaintiffs, from judgment of C. P. Delaware Co., June T., 1919, No. 699, on verdict for defendants, in case of Margaret L. Leedom et al. v. Alfred W. Palmer and E. Mary Palmer, his wife.    Before WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.    Affirmed.

Ejectment.    Before BROOMALL, J.

The opinion of the Supreme Court states the facts.

Verdict and judgment for defendants: see 15 Delaware Co. R. 522.    Plaintiff appealed.

*Errors assigned* were various instructions, sufficiently appearing by the opinion of the Supreme Court, quoting record.

*John E. McDonough,* with him *J. Eugene Walker,* for appellants, cited: Darlington's Est., 147 Pa. 624; Matthali v. Pownall, 235 Pa. 460; McConville v. Ingham, 268 Pa. 507; Corrigan v. Conway, 269 Pa. 373.

W. *Roger Fronefield,* for appellees, cited: McLaughlin
v. Collins, 138 Pa. 198; Funston v. Twining, 202 Pa. 88;
Robinson v. Powell, 210 Pa. 232; Clark v. Clark, 174 Pa.
309; Kleckner v. Kleckner, 212 Pa. 515; Crothers v.
Crothers, 149 Pa. 201; Reehling v. Byers, 94 Pa. 316;
Doran v. McConlogue, 150 Pa. 98; Barnard v. Kell, 271
Pa. 80.

OPINION BY MR. JUSTICE KEPHART, March 20, 1922:

J. Jones Leedom, a childless widower, died intestate
August 14, 1919, at the age of seventy-six. His next of
kin were brothers and sisters. From 1888 to 1903 he
lived the greater part of the time with his sister and her
husband, appellees, and from 1903 to 1915 on his farm,
reserving a room therein and boarding with the tenant.
He then left the farm and went to live permanently with
appellees in Gradyville, Delaware County. April 1,
1916, he arranged for Palmer and his wife to rent the
farm, for his board and farm taxes. A few months be-
fore this occurred Leedom had a slight stroke, lasting
about two weeks, but leaving him physically weakened.
Early in 1918 a deed conveying the farm to appellees
was executed; it contained a covenant that the grant
was "under and subject nevertheless to the express cove-
nant and agreement that the said parties and the sur-
vivor of them shall board, nurse, care for and maintain
the grantor during the term of his natural life and fur-
nish everything necessary for that purpose at their own
proper cost and expense." This action of ejectment was
instituted in the court below by two sisters and a niece
to recover the three-fourths interest conveyed by the
deed. It was averred the deed was defective because the
grantor (a) lacked mental capacity, (b) was subjected to
undue influence, and (c) the facts disclosed a confiden-
tial relationship between the parties.

The court below charged specifically on the first two
questions, stating the law "imposed on the grantees the
burden of satisfying the jury that it [the deed] was not

procured by imposition, deceit, coercion or overreaching ......, and the burden was on the plaintiffs to satisfy the jury that the grantor was mentally incompetent and did not know what he was doing." The jury found for appellees. It is now urged the court below failed to instruct on the third ground of defense, that the grantees should establish the grant was the intelligent and understood act of the grantor, fair, conscientious, beyond the reach of suspicion: Greenfield's Est., 14 Pa. 489, 505; Corrigan v. Conway, 269 Pa. 373, 377. The verdict and judgment disposed of the questions of undue influence and mental capacity, and every other element necessary to sustain the validity of the deed, subject, of course, to the question now to be considered.

Our sole inquiry, then, is, Was the third specification of defense sustained by the evidence? Confidential relation is not confined to any specific association of the parties; it is one wherein a party is bound to act for the benefit of another, and can take no advantage to himself. It appears when the circumstances make it certain the parties do not deal on equal terms, but, on the one side there is an overmastering influence, or, on the other, weakness, dependence or trust, justifiably reposed; in both an unfair advantage is possible. When these circumstances appear, the law presumes the transaction void, unless the party claiming the benefit of such transaction shows affirmatively that no deception was used and the act was the intelligent and understood act of the grantor, fair, conscientious and beyond the reach of suspicion. No precise language can define the limits of the relation or fetter the power of the court to control these conditions. While not confined to any specific association of parties, it generally exists between trustee and cestui que trust, guardian and ward, attorney and client, and principal and agent. In some cases the confidential relation is a conclusion of law, in others it is a question of fact to be established by the evidence: Hetrick's App., 58 Pa. 477, 479; Scattergood v. Kirk, 192 Pa. 263, 267.

The mere existence of kinship does not, of itself, give rise to confidential relation such as would impose the burden of proof on the one receiving a gift to assert its validity. A child may take a gift from a parent without being required to furnish explanatory testimony: Clark v. Clark, 174 Pa. 309, 336, wherein the court quoted the English rule announced in Baker v. Bradley, 7 De G., M. & G. 597; Bigelow on Fraud, 368; Worrall's App., 110 Pa. 349, 364; Carney v. Carney, 196 Pa. 34, 38; Compton v. Hoffman, 265 Pa. 257, 263; Neureuter v. Scheller, 270 Pa. 80; Langdon v. Allen, 1 W. N. C. 395, 397; Hiester v. Hiester, 228 Pa. 102, 107. Nor is there confidential relation simply because the parties to the transaction are brothers and sisters: Funston v. Twining, 202 Pa. 88, 90. Where a conveyance of property is to a relative in consideration of support for life, in the absence of fraud or undue influence, it is favored as a family settlement. Under similar conditions, where the grantee was the servant of the donor, and grantee's wife nursed the donor in his last illness, the conveyance was not set aside because of supposed confidential relations: Barnard v. Kell, 271 Pa. 80, 86.

Where undue influence and incompetency do not appear, and the relation between the parties is not one ordinarily known as confidential in law, the evidence to sustain a confidential relation must be certain; it cannot arise from suspicion or from infrequent or unrelated acts; care must be used not to confound acts springing from natural love and affection with confidential relations, and, while the line of demarcation may in some cases be narrow, nevertheless, to sustain the integrity of gifts based on such affection in family relations, it is necessary the distinction should exist. Here the parties are brother and sister. While the brother, Leedom, at times was ill, and may at times have been dependent on appellees, the element of confidential relation was wholly lacking in all their dealings. Dependency does not necessarily beget a confidential relation,—indeed, it may be quite the reverse.

It appears the grantor, while not robust after his first ill-ness, left the farm whenever he saw fit, was in nowise hampered in his movements, acting as a free agent. When his condition grew worse, and, just before his death, his sister and her husband slept in his room, to quickly minister to his ills, this savors nothing of con-fidential relation.    It might generate a keener feeling of gratitude, but ordinarily with brother and sister it would be taken as a matter of course; if anything, such acts evidence an earnest desire to care for their brother. He gave a Ford runabout to his nephew and a road-cart to Palmer in 1916, and four pieces of furniture to his sister in the summer of 1917,—one could scarcely charge confidential relations from such gifts.    In Janu-ary, 1916, Palmer had in his hand a pocketbook of Lee-dom's containing $500.    It does not appear appellees re-ceived any of it, for in the summer of this year decedent made repairs on the farm, while the title was still in him, to the extent of $500.    These acts, separated as they are in point of time, are ordinary matters between a brother and sister; there is nothing in them to imply a confiden-tial relation.    It appears these appellants were not so-licitous about their brother, and he rarely exchanged family courtesies with them.

But one other scrap of evidence remains to be consid-ered,—a power of attorney given to satisfy a mortgage, made when the grantor could not leave the house.    It was given to Palmer, ten months after the execution of the deed, to satisfy the mortgage of record.    This, standing alone, or with all the other circumstances, is not suffi-cient evidence to establish a preëxisting confidential re-lation.    The money was placed in the hands of an at-torney for keeping, and was turned over to the estate to be duly accounted for.    Leedom was a man of strong will, and when the deed was to be executed it was fully explained to him by a reputable member of the bar, in the absence of appellees.

From an examination of the evidence, we agree with the court below in its conclusion:

"At the time of the execution of the deed on January 3, 1918, Alfred W. Palmer had been in possession of the farm since April 1, 1916, under a contract to pay a rent and support the decedent. This had been performed by the tenant, and its reasonableness was not questioned. The effect of the deed was merely to continue this arrangement for the term of decedent's life. The fact of this conveyance was made known to one of the plaintiffs in the lifetime of J. Jones Leedom by Alfred W. Palmer. It was not challenged, and the support of the decedent was allowed to be continued.

"The execution of this deed was not only not suspicious, but was quite a natural thing to do. The decedent was unmarried and without issue. He was advanced in years. His natural concern was to make provision for his support for the remainder of his life. He had been living with the defendants for about two years, receiving his support from them under a yearly contract, and receiving sisterly attentions from his sister, when he was sick. He was not especially affectionate toward the plaintiffs, his other kindred. What more natural thing to do, than to convey the farm to the sister and her husband in return for their contract to support him for life."

The assignments of error are overruled and the judgment is affirmed.